## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

ANTHONY COOK,

       Petitioner,

v.                                                    Case No. 21-CV-0461-JFH-SH

CARRIE BRIDGES, Warden,[1]

       Respondent.

## OPINION AND ORDER

This matter is before the Court on Petitioner Anthony Cook's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ("Petition").  Dkt. No. 1.  Cook challenges the lawfulness of his custody under the criminal judgment entered against him in Tulsa County District Court Case No. CF-2017-849.  Cook claims he is unlawfully detained in state custody under that judgment because he is "a non-Indian of African descent whose family has resided on the Cherokee Nation reservation since prior to Oklahoma statehood," he "was convicted of a crime alleged to have occurred within the boundaries of [the] Cherokee Nation reservation," and the State of Oklahoma therefore lacked jurisdiction to prosecute him "due to provisions of treaties between U.S. and Cherokee Nation reserving jurisdiction to the Tribe."  Dkt. No. 1 at 5. On consideration of the record, the parties' arguments, and applicable law, the Court DENIES the Petition.

---

[1]  Cook is presently imprisoned at the James Crabtree Correctional Center ("JCCC") in Helena, Oklahoma.  Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes the JCCC's current warden, Carrie Bridges, in place of the JCCC's former warden, Scott Nunn, as party Respondent.  The Clerk of Court shall note on the record this substitution.

## BACKGROUND

In October 2019, Cook pleaded guilty to trafficking in illegal drugs; acquiring proceeds from drug activity; possessing controlled drugs without a tax stamp affixed; possessing a firearm after former conviction of a felony; possessing a firearm while in the commission of a felony; two counts of receiving stolen property; and possessing or selling of paraphernalia while not using a motor vehicle.  Dkt. No. 9-1 at 1; Dkt. No. 9-8.  The trial court sentenced Cook to prison terms of twenty years as to five counts; a prison term of ten years as to one count; a prison term of five years as to one count; and a jail term of one year as to one count, with all terms to be served concurrently with each other.  Dkt. No. 9-1 at 10.  Cook did not move to withdraw his plea or seek direct review of his judgment and sentence by filing a certiorari appeal in the Oklahoma Court of Criminal Appeals ("OCCA").  Dkt. No. 9-2 at 19; Dkt. No. 9-5 at 1.

In July 2020, the Supreme Court of the United States issued two decisions relevant to Cook's claim that the State of Oklahoma improperly exercised criminal jurisdiction over his prosecution—*McGirt v. Oklahoma*, 591 U.S. 894 (2020), and *Sharp v Murphy*, 591 U.S. 977 (2020) (Mem.).  *McGirt* reached the Supreme Court via a petition for writ of certiorari filed by a state prisoner who sought review of the OCCA's decision denying his application for postconviction relief.  *See McGirt v. Oklahoma*, 140 S. Ct. 659 (2019) (Mem.) (granting petition for writ of certiorari).  The prisoner in *McGirt* claimed that because he is Indian, the State of Oklahoma lacked authority to prosecute him for serious offenses he committed within the boundaries of the Muscogee (Creek) Nation Reservation.  *McGirt*, 591 U.S. at 898.  The *McGirt* Court held that because Congress did not disestablish the Muscogee (Creek) Nation Reservation the land within the historical boundaries of that reservation is "Indian country," as defined in 18 U.S.C. § 1151(a), and, as a result, the federal government has exclusive jurisdiction, under 18

2

U.S.C. § 1153, to prosecute Indians for committing certain crimes within the boundaries of that reservation. *McGirt*, 591 U.S. at 913, 932-34. Relying on *McGirt*, the Supreme Court in *Murphy* summarily affirmed the United States Court of Appeals for the Tenth Circuit's 2017 decision that had reached the same conclusions regarding the continued existence of the Muscogee (Creek) Nation Reservation and the exclusivity of federal jurisdiction as to certain crimes committed within that reservation by Indians. *Murphy*, 591 U.S. at 977; *see Murphy v. Royal*, 875 F.3d 896, 937-38 (10th Cir. 2017). But neither Supreme Court decision addressed whether Congress disestablished the Cherokee Nation Reservation. *See McGirt*, 591 U.S. at 932 ("Each tribe's treaties must be considered on their own terms, and the only question before us concerns the Creek.").

Roughly three months after the *McGirt* decision, Cook filed a motion to dismiss for lack of jurisdiction in state district court. Dkt. No. 9-3. In that motion, Cook identified himself as a "member of the Creek Tribe"; alleged that he was convicted of crimes that occurred in Indian country—namely "the Cherokee/Creek Reservation"; and claimed "[t]hat either the Treaties with the United States & Cherokee and Muscogee (Creek) and/or 18 U.S.C. § 1151, § 1153 operate to deny the State of Oklahoma criminal jurisdiction" over his prosecution. *Id.* at 1-2, 4. In support of this claim, Cook urged the state district court to consider the Cherokee Treaty of 1866, art. 13, 14 Stat. 799, *McGirt*, and *Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172 (1999). *Id.*

While Cook's motion to dismiss was pending in state district court, the OCCA concluded, in a different case, that a state district court "appropriately applied *McGirt* to determine that Congress did establish a Cherokee Reservation and that no evidence was presented showing that Congress explicitly erased or disestablished the boundaries of the Cherokee Reservation." *Hogner v. State*, 500 P.3d 629, 635, *overruled on other grounds by Deo v. Parish*, 541 P.3d 833 (Okla.

Crim. App. 2023).

In June 2021, the state district court construed Cook's motion to dismiss as an application for postconviction relief and denied the application.  Dkt. No. 9-5.  The state district court found that witnesses would testify that Cook committed his crimes of conviction "within the boundaries of the Muscogee Creek Nation and/or the Cherokee Nation."  *Id.* at 1-2.  The state district court further found, however, that Cook "failed to offer sufficient proof that he is an 'Indian' for purposes of invoking an exception to state jurisdiction" because he did not present "any affirmative evidence that he has any significant degree of Indian blood."  *Id.* at 2 (citing *Goforth v. State*, 644 P.2d 114 (Okla. Crim. App. 1982), for the proposition that to establish status as Indian for purposes of federal law a person must have "a significant percentage of Indian blood" and "be recognized as an Indian either by the federal government or by some tribe or society of Indians").[2]

Cook filed a postconviction appeal (Case No. PC-2021-650), and the OCCA affirmed the district court's denial of postconviction relief based on its then recent decision in *State ex rel. Matloff v. Wallace*, 497 P.3d 686 (Okla. Crim. App. 2021) ("*Wallace*").  In *Wallace*, the OCCA reaffirmed several post-*McGirt* decisions recognizing the existence of reservations in Oklahoma, including its decision in *Hogner*, but held "that *McGirt* and [the OCCA's] post-*McGirt* decisions recognizing these reservations shall not apply retroactively to void a conviction that was final when *McGirt* was decided."  497 P.3d at 689.  Applying *Wallace*, the OCCA reasoned that the state district court appropriately denied postconviction relief because Cook's judgment was final before *McGirt* was decided.  Dkt. No. 9-7.

---

[2]  *Accord United States v. Prentiss*, 273 F.3d 1277, 1280 (10th Cir. 2001) ("We have concluded that, '[f]or a criminal defendant to be subject to [federal prosecution under 18 U.S.C.] § 1153, the court must make factual findings that the defendant "(1) has some Indian blood; and (2) is recognized as an Indian by a tribe or by the federal government."'" (quoting *Scrivner v. Tansy*, 68 F.3d 1234, 1241 (10th Cir. 1995)).

Cook now seeks federal habeas relief, identifying a single claim: "[t]he trial court lacked jurisdiction to prosecute [him] due to provisions of treaties between US and Cherokee Nation reserving jurisdiction to the Tribe." Dkt. No. 1, at 5. In support of this claim, Cook alleges he is "a non-Indian of African descent whose family has resided on the Cherokee reservation since prior to Oklahoma Statehood [and he] was convicted of a crime alleged to have occurred within the boundaries of the Cherokee Nation Reservation." *Id.*

Respondent urges the Court to deny the Petition for three reasons. First, Respondent contends that, "[t]o the extent the OCCA's ruling on [Cook's] *McGirt* claim is considered to be the application of a procedural bar, it was independent and adequate and [Cook] has not shown cause and prejudice or a fundamental miscarriage of justice." Dkt. No. 9 at 9, 17-37. Second, Respondent contends that, "[t]o the extent the OCCA's ruling is considered to be a merits adjudication," 28 U.S.C. § 2254(d) bars relief because the OCCA's ruling "is neither contrary to, or an unreasonable application of, any clearly established Supreme Court law, nor was it based on an unreasonable determination of fact."[3] *Id.* at 9, 38-54. Third, Respondent contends that Cook's *McGirt* claim fails on de novo review because Cook has not shown that he is Indian for purposes of federal law. *Id.* at 9, 54-55.

In his Reply, Cook asserts that his claim is not based on *McGirt* and that his claim instead is based on "the treaties between the Cherokee Nation and the United States [that] deprive Oklahoma of criminal jurisdiction for crimes, which occur on the reservation." *Id.* at 1-5, 7. Cook

---

[3] Section 2254(d) precludes relief on a claim adjudicated on the merits in state court unless the petitioner shows that the state court's adjudication of that claim either: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

also asserts:  (1) that the OCCA's decision is contrary to "the rule in *Solem v. Helm*, 465 U.S. 463 (1984); and provisions in 1835 Treaty of New Echota, 7 Stat. 478 and 1866 Treaty of Washington, 14 Stat. 799"; and (2) that *Wallace* "contradicts US Supreme Court precedent"; should be applied prospectively only; and does not apply to convictions "involving a claim of lack of jurisdiction due to treaty provision or federal statutes" because those convictions cannot be "final within the meaning of the law." *Id.* at 1, 5-7.

## DISCUSSION

A federal court may grant federal habeas relief to a state prisoner only if that prisoner shows that he "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  "To ensure that federal habeas corpus retains its narrow role, [the Antiterrorism and Effective Death Penalty Act ("AEDPA")] imposes several limits on habeas relief, and [the United States Supreme Court] ha[s] prescribed several more."  *Shinn v. Ramirez*, 596 U.S. 366, 377 (2022).  "And even if a prisoner overcomes all of these limits, he is never entitled to habeas relief.  He must still 'persuade a federal habeas court that law and justice require [it]."  *Id.* (alteration in original) (quoting *Brown v. Davenport*, 596 U.S. 118, 134 (2022)).  On the record presented, the Court finds and concludes that that law and justice do not require habeas relief.

At bottom, and regardless of whether Cook's claim relies on *McGirt* or relies on treaties between the United States and the Cherokee Nation, Cook's claim rests on the premise that he is in state custody in violation of federal law because only the federal government or the Cherokee Nation has jurisdiction to prosecute him for crimes that he committed within the boundaries of the Cherokee Nation Reservation.  *See* Dkt. No. 1 at 3, 5; Dkt. No. 10 at 2, 4.

Under Tenth Circuit precedent, Cook's claim challenging the trial court's alleged lack of jurisdiction is cognizable on federal habeas review because it implicates Cook's Fourteenth

Amendment right to due process.  *See Yellowbear v. Wyo. Att'y Gen.*, 525 F.3d 921, 924 (10th Cir. 2008) ("Absence of jurisdiction in the convicting court is indeed a basis for federal habeas corpus relief cognizable under the due process clause.").  But even if this Court overlooks any procedural bars that may preclude Cook's request for federal habeas relief and reviews his claim de novo, relief is not warranted because no evidence in the record suggests, much less supports, that Cook is Indian for purposes of federal law.[4]  A person is Indian for purposes of federal law when the person:  (1) "has some Indian blood"; and (2) "is recognized as an Indian by a tribe or by the federal government."  *Prentiss*, 273 F.3d at 1280 (citations and internal quotation marks omitted).  Cook candidly admits that he is not an Indian.  *See* Dkt. No. 1 at 5 (self-identifying as a "non-Indian of African descent").  Cook did not present evidence in state district court to establish that he is Indian.  *See* Dkt. No. 9-5 at 2 (finding that Cook did not present in state court "any affirmative evidence that he has any significant degree of Indian blood" and concluding that Cook "failed to offer sufficient proof that he is an 'Indian' for purposes of invoking an exception to state jurisdiction").  And Cook likewise has not presented any evidence in this habeas proceeding to show that he is Indian.  *See generally*, Dkt. Nos. 1, 10.

In his Reply, however, Cook appears to assert that he is a member of the Cherokee Nation based on his African descent.  Cook contends that the 1866 Treaty of Washington "provided for tribal membership for former Cherokee Nation slaves and others of African descent living in Cherokee Nation."  Dkt. No. 10, at 3.  Even if the Court liberally construes this broad statement as

---

[4]  It is well-established that federal habeas courts have discretion "bypass [any] procedural issues" when a claim "is readily resolved on the merits."  *Smith v. Duckworth*, 824 F.3d 1233, 1242 (10th Cir. 2016); *see also Revilla v. Gibson*, 283 F.3d 1203, 1210-11 (10th Cir. 2002) (noting that when a habeas claim "may be disposed of in straightforward fashion on substantive grounds," a federal court may "invoke [its] discretion to bypass complex issues of exhaustion and procedural bar to reject the claim on the merits" (internal citations omitted)).

asserting that Cook is a descendant of a former Cherokee Nation slave, that does not help Cook

establish his status as an Indian for purposes of federal law. One treaty provision that Cook relies

on provides:

> The Cherokees also agree that a court or courts may be established by the United
> States in said Territory, with such jurisdiction and organized in such manner as may
> be prescribed by law: Provided, That the judicial tribunals of the nation shall be
> allowed to retain exclusive jurisdiction in all civil and criminal cases arising within
> their country in which members of the nation, by nativity or adoption, shall be the
> only parties, or where the cause of action shall arise in the Cherokee Nation, except
> as otherwise provided in this treaty.

Treaty with the Cherokee, Cherokee Nation-U.S., art. 13, July 19, 1866, 14 Stat. 799.[5] The plain

language this provision tends to support Cook's view that he could be recognized as a citizen of

the Cherokee Nation if he is a descendant of a former Cherokee slave. But the Supreme Court's

decisions in *Alberty v. United States*, 162 U.S. 499 (1896), and *Oklahoma v. Castro-Huerta*, 597

U.S. 629 (2022), do not support Cook's treaty-based claim. The *Alberty* Court reasoned that some

language in Article 13 was "superseded" by Section 30 of the Oklahoma Organic Act, 26 Stat. 81

---

[5] Cook also cites the following provision from the Treaty of New Echota:

> The United States hereby covenant and agree that the lands ceded to the Cherokee
> nation in the forgoing article shall, in no future time without their consent, be
> included within the territorial limits or jurisdiction of any State or Territory. But
> they shall secure to the Cherokee nation the right by their national councils to make
> and carry into effect all such laws as they may deem necessary for the government
> and protection of the persons and property within their own country belonging to
> their people or such persons as have connected themselves with them: provided
> always that they shall not be inconsistent with the constitution of the United States
> and such acts of Congress as have been or may be passed regulating trade and
> intercourse with the Indians; and also, that they shall not be considered as extending
> to such citizens and army of the United States as may travel or reside in the Indian
> country by permission according to the laws and regulations established by the
> Government of the same.

Treaty with the Cherokee, Cherokee Nation-U.S., art. 5, Dec. 29, 1835, 7 Stat. 478. Cook appears
to rely on this provision to assert that Oklahoma lacks criminal jurisdiction within the Cherokee
Nation Reservation, regardless of whether a defendant is Indian. Dkt. No. 10 at 3.

(1890).  *Alberty*, 162 U.S. at 502-03.  The *Alberty* Court stated:

> By the act of May 2, 1890, to provide a temporary government for the territory of
> Oklahoma, and to enlarge the jurisdiction of the United States court in the Indian
> Territory (26 Stat. 81), it is provided (section 30) 'that the judicial tribunals of the
> Indian Nations shall retain exclusive jurisdiction in all civil and criminal cases
> arising in the country in which members of the Nation, by nativity or by adoption,
> shall be the only parties'; and, by section 31, that 'nothing in this act shall be so
> construed as to deprive any of the courts of the civilized Nations of exclusive
> jurisdiction over all cases arising wherein members of said Nations, whether by
> treaty, blood or adoption, are the sole parties; nor so as to interfere with the right
> and power of said civilized Nations to punish said parties for violation of the
> statutes and laws enacted by their national councils, where such laws are not
> contrary to the treaties and laws of the United States.'
>
> It will be observed that while this act follows the treaty so far as recognizing the
> jurisdiction of the Cherokee Nation as to all cases arising in the country in which
> members of the Nation, by nativity or by adoption, are the sole or only parties, it
> omits that portion of the thirteenth article of the treaty wherein is reserved to the
> judicial tribunals of the Nation exclusive jurisdiction 'where the cause of action
> shall arise in the Cherokee Nation,' and to that extent apparently supersedes the
> treaty.

*Id.*  The *Alberty* Court thus concluded that, as superseded by the Oklahoma Organic Act, Article

13, reserves exclusive jurisdiction to the Cherokee Nation to prosecute cases "wherein members

of [the civilized] Nations, whether by treaty, blood or adoption, are the sole parties."  *Id.*  The

*Alberty* Court further held that, as applied to criminal cases, "the words 'sole' or 'only parties'"

"really mean parties to the crime."  *Id.* at 504.  The *Alberty* Court reasoned that this interpretation

of "parties" best comports with language in the predecessor statutes to the General Crimes Act, 18

U.S.C. § 1152, "which reserves to the courts of the [Cherokee] Nation jurisdiction of 'crimes

committed by one Indian against the person or property of another Indian.'"  *See id.* at 501-02,

504-05 (discussing language in Rev. St. §§ 2145 and 2146).  Based on this reasoning, the *Alberty*

Court concluded that the Cherokee Nation did not have exclusive jurisdiction to prosecute a crime

committed within the Indian Territory by a defendant who was "a member of the Cherokee Nation,

but not an Indian,"—specifically, a "freedman" with "the rights of a native Cherokee,"—when the

victim was a non-Indian.  *Id.* at 500-03, 505.  The *Alberty* Court further concluded that the federal court therefore had jurisdiction over the defendant's criminal prosecution.  *Id.* at 505.  *Alberty* thus held that the Cherokee Nation does not have exclusive criminal jurisdiction in a case like Cook's that involves a defendant who presumably may be a Cherokee Nation citizen as a descendant of a former Cherokee slave but who is not Indian for purposes of federal law.  *Alberty*, however, was decided before Oklahoma became a state.

More recently, in *Castro-Huerta*, the Supreme Court addressed "a jurisdictional question about the prosecution of crimes committed by non-Indians against Indians in Indian country."  597 U.S. at 632.  There is no evidence in the record regarding the Indian or non-Indian status of the victims, if any, of Cook's crimes.  Regardless, *Castro-Huerta* precludes relief because the *Castro-Huerta* Court:  (1) held that "the Federal Government and the State have concurrent jurisdiction to prosecute crimes committed by non-Indians against Indians in Indian country," *id.* at 633; and (2) reaffirmed that "[s]tates have jurisdiction to prosecute crimes committed by non-Indians against non-Indians in Indian country," *id.* at 637 (citing *United States v. McBratney*, 104 U.S. 621 (1882)).  Applying the law to the facts of this case, the Court rejects Cook's claim, to the extent he argues that treaty provisions deprived the State of criminal jurisdiction to prosecute him, a self-identified "non-Indian of African descent whose family has lived on the Cherokee reservation since prior to Oklahoma statehood."  Dkt. No. 1 at 5.  Even assuming Cook could gather and present evidence that he is a descendant of a former Cherokee slave, he has presented no evidence

in state court or in this habeas proceeding, that he has any degree of Indian blood.[6]

Because the record shows that Cook is not Indian for purposes of federal law, the Court finds and concludes that he has not shown that he is in state custody in violation of federal law, as required to obtain relief under § 2254(a).  The Court therefore DENIES the Petition.  Because reasonable jurists would not debate this Court's resolution of the Petition or conclude that Cook has made "a substantial showing of the denial of a constitutional right," the Court also DENIES a certificate of appealability.  *See* 28 U.S.C. § 2253; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

IT IS THEREFORE ORDERED that:  (1) the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [Dkt. No. 1] is DENIED; (2) a certificate of appealability is DENIED; and (3) a separate judgment shall be entered in this matter.

IT IS FURTHER ORDERED that the Clerk of Court shall note on the record the substitution of Carrie Bridges, Warden, in place of Scott Nunn as party Respondent.

Dated this 23rd day of October, 2024.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE

---

[6] "Certificates of Degree of Indian Blood ("CDIBs") are issued by the [Bureau of Indian Affairs] and are the BIA's certification that an individual possesses a specific quantum of Indian blood." *Davis v. United States*, 192 F.3d 951, 956 (10th Cir. 1999).  Nothing in the record supports that Cook submitted a CDIB card or any other documentation in state court proceedings.  Nor has he submitted any such evidence to this Court with his Petition or Reply.  It may be possible that Cook could find evidence to support his apparent position that he is a Cherokee citizen.  *See Cherokee Nation v. Nash*, 267 F. Supp. 3d 86, 140 (D. D.C. 2017) ("In accordance with Article 9 of the 1866 Treaty, the Cherokee Freedmen have a present right to citizenship in the Cherokee Nation that is coextensive with the rights of native Cherokees.").  But even generously assuming Cook could develop evidence of tribal citizenship, that would not show that he possesses any quantum of Indian blood.  *See Vann v. Kempthorne*, 534 F.3d 741, 744 (D. D.C. 2008) (discussing the Dawes Commission that was directed by Congress to "create membership rolls for  . . . the Cherokee Nation" and stating, "[t]he rolls of the Cherokees were completed in 1907 and resulted in two lists: a 'Blood Roll' for native Cherokees, and a 'Freedman Roll' for former slaves and their descendants").